**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| COACH, INC. and COACH SERVICES, INC., | |
| Plaintiffs, | **OPINION** |
| v. | Civ. No. 10-2794 (WHW) |
| COSMETIC HOUSE, SOON CHEOL MOH and DOES 1 THROUGH 10, | |
| Defendants. | |

**Walls, Senior District Judge**

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Coach") move for entry of default judgment and a permanent injunction against defendants Cosmetic House and Soon Cheol Moh. The motion is unopposed. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the Court decides this motion without oral argument. The motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Coach manufactures, markets and sells fine leather and mixed material products including handbags, wallets, accessories, eyewear, footwear, jewelry and watches. (Rosenberg Decl., Ex. A; Compl. at ¶ 11.) Coach sells its products through its own specialty retail stores, department stores, catalogs and the internet. (Id.) It has used a variety of legally-protected trademarks, trade dresses and design elements/copyrights for many years in connection with the advertisement and sale of its products (collectively, the "Coach Marks"). (Walden Decl.; Compl.

1

**NOT FOR PUBLICATION**

at ¶¶ 12, 14-15, 20.)   Coach has put substantial resources into developing, advertising and promoting the Coach Marks.  (Compl. at ¶ 13.)  Coach alleges that products bearing the Coach Marks are widely recognized by consumers and the public as being high-quality products exclusively associated with Coach.  (Id.)

On or about April 11, 2010, James Ricuarte, an investigator from Allegiance Protection Group, Inc., conducted a survey of retail stores on Market Street in Newark, New Jersey.  His firm was retained in order to determine whether counterfeit Coach products were being advertised or sold.  Ricuarte observed that defendant Cosmetic House "displayed for sale . . . numerous amounts of sunglasses bearing the Coach trademark."  (Ricaurte Decl. at ¶ 4.)  He purchased a pair of these sunglasses for $5.00.  (Id.; Photographs at ECF No. 14, Ex. to Mot. for Default Judgment.)  Coach examined these sunglasses and determined that they were counterfeit (Walden Decl. at ¶ 15.)

The complaint in this action was filed by Coach on June 1, 2010.  Coach brings claims for trademark counterfeiting and infringement under the Lanham Act (15 U.S.C. § 1114) (Counts I and II), trade dress infringement (15 U.S.C. § 1125(a)) (Count III), false designation of origin and false advertising (15 U.S.C. §1125(a)) (Count IV), trademark dilution (15 U.S.C. § 1125(c)) (Count V), trademark counterfeiting under N.J.S.A. § 56:3-13.16 (Count VI), unfair competition under N.J.S.A. § 56:4-1 et seq. (Count VII), common law trademark infringement (Count VIII) and unjust enrichment under the common law of New Jersey (Count IX).

Defendant Soon Cheol Moh, the registered owner of Cosmetic House, was served with a copy of the Summons and Complaint on June 10, 2010. (ECF No. 8.)  Defendant Cosmetic House was served with a copy of the Summons and Complaint on June 14, 2010.  (ECF No. 7.)  To date, the defendants have not answered or otherwise defended this action.  On September 30,

**NOT FOR PUBLICATION**

2010, the Clerk of the Court entered default against the defendants for failure to appear, plead or otherwise defend. (ECF No. 11.) Coach now moves to enter default judgment against the defendants.

## STANDARD OF REVIEW

Rule 55 of the Federal Rules of Civil Procedure governs a court's decision to grant default judgment. Parties seeking default judgment are not entitled to such relief as a matter of right. See Petrucelli v. Bohringer & Ratzinger, 46 F.3d 1298, 1303 (3d Cir. 1995). The Clerk of the Court must first approve plaintiff's request for entry of default, after which a court may enter default judgment. Fed. R. Civ. P. 55(a). In order to determine if default judgment should be granted, the court must ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Directv v. Croce, 332 F. Supp. 2d 715, 717 (D.N.J. 2004). Courts should accept as true the well-pleaded factual allegations of the complaint, but need not accept the moving party's legal conclusions or factual allegations relating to the amount of damages. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). A court must "conduct its own inquiry 'in order to ascertain the amount of damages with reasonable certainty.'" Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs., No. 05-3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007) (quoting In re Indus. Diamonds, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

Once a legitimate cause of action is established, a court decides whether to issue a default judgment by looking at: "(1) prejudice to the plaintiff if default is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.2d 154, 164 (3d Cir. 2000). The issuance of default judgment is largely a matter of judicial discretion. Hritz v. Woma Corp., 732 F.2d

NOT FOR PUBLICATION

1178, 1181 (3d Cir. 1984).  This "discretion is not without limits," as the Third Circuit's preference is "that cases be disposed of on the merits whenever practicable."  Id.

## JURISDICTION

This Court has original jurisdiction over plaintiffs' claims arising under federal law pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

## DISCUSSION

### I.  Sufficiency of Causes of Action

*Federal Claims*

**A. Trademark Infringement (15 U.S.C. § 1441) and False Designation (15 U.S.C. § 1125(a))**

Trademark infringement (Count II) and false designation (Count IV) are measured by identical standards.  A & H Swimwear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000).  "To prove either form of Lanham Act violation, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.  Id.  (citing Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 437 (3d Cir.2000)).

A certificate of registration issued by the United States Patent and Trademark Office constitutes prima facie evidence of the validity and ownership of a disputed mark.  15 U.S.C. § 1057(b), 1115(a).  Here, Coach has attached copies of the trademark registrations over which they assert ownership (Compl. at ¶ 14), and states that the "Coach Trademarks at issue in this case have been continuously used and have never been abandoned." (Compl. at ¶ 19.)  Coach asserts that "[t]hese registrations are valid, subsisting in full force and effect, and have become

4

**NOT FOR PUBLICATION**

incontestable pursuant to 15 U.S.C. § 1125(c)(1))." (Compl. at ¶ 15.) The plaintiff has satisfied the first and second elements of the trademark infringement and false designation claims.

As to the third element, a "likelihood of confusion" exists where "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d Cir. 1991) (citation omitted). Courts assess a variety of non-exhaustive factors to determine if two similar marks are likely to cause confusion, including:

> 1) The degree of similarity between the owner's mark and the alleged infringing mark, 2) the strength of the owner's mark, 3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase, 4) the length of time the defendant has used the mark without evidence of actual confusion arising, 5) the intent of the defendant adopting the mark, 6) the evidence of actual confusion, 7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media, 8) the extent to which the target of the parties' sales efforts are the same, 9) the relationship of the goods in the minds of the consumers because of the similarity of function, and 10) other factors suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that he is likely to expand into that market.

Freedom Card, Inc. v. JP Morgan Chase & Co., 432 F.3d 463, 471 (3d Cir. 2005) (citation omitted). The Third Circuit has instructed district courts to "utilize the factors that seem appropriate to a given situation." A & H Sportswear, 237 F.3d at 215. And "[w]hile all factors should be considered, the degree of similarity seems to be most important." Platypus Wear, Inc. v. Bad Boy Club, Inc., Civ. No. 08-2662, 2009 WL 2147843, at *3 (D.N.J. July 15, 2009) (citing Ford, 830 F.2d at 292).

Here, it is alleged that the defendants sold counterfeit Coach sunglasses. The specific pair of sunglasses purchased by the investigator bore the classic "Signature C" Coach trademark.

5

**NOT FOR PUBLICATION**

(Compl. at ¶ 24.) The plaintiffs have offered pictures of these sunglasses. (ECF No. 14.) The uncontested assertions in the complaint and the supporting evidence are sufficient to show a likelihood of confusion between the counterfeit sunglasses and genuine Coach products. Coach has satisfied the third element of its trademark infringement and false designation claims; a cause of action has been established for both claims.

### B. Trademark Counterfeiting (15 U.S.C. § 1114)

To establish trademark counterfeiting (Count I), "the record must establish that (1) defendants infringed a registered trademark in violation of the Lanham Act . . . , and (2) intentionally used the trademark knowing it was counterfeit or was wilfully blind to such use." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 537 (D.N.J. 2008) (citation omitted). "The only distinction between the standard for federal trademark counterfeiting and the standard for establishing infringement is that to obtain treble or statutory damages for a counterfeiting claim, a plaintiff must show that the defendant intentionally used the plaintiff's trademark, knowing that it was a counterfeit." Id. at 536-37. The Third Circuit has declared that a defendant's trademark infringement will be considered "wilful" if it "involves an intent to infringe or a deliberate disregard of a mark holder's rights." Securacomm Consulting Inc. v. Securacom Inc., 166 F.3d 182, 187 (3d Cir. 1999). An example of such wilful conduct is a "deliberate and unnecessary duplicating of a plaintiff's mark . . . in a way that was calculated to appropriate the goodwill the plaintiff had nurtured." Id. (citing W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 662 (2d Cir. 1970)).

It has already been established that the defendants infringed a registered trademark in violation of the Lanham Act. Coach also alleges that the defendants were "well aware of the extraordinary fame and strength of the Coach Brand." (Compl. at ¶ 25.) Coach states that the

defendants "knowingly and intentionally" engaged in illegal counterfeiting "for the purpose of trading on the goodwill and reputation of the Coach marks and Coach products." (Compl. at ¶ 27.) Coach is a well-known luxury brand, and such brands are often imitated in order to profit from the company's reputation for high-end products. Here, the photos of the confiscated sunglasses show that they were intended to imitate authentic Coach sunglasses. The Court finds that the elements of trademark counterfeiting are met and a cause of action has been sufficiently established.

### C. Trade Dress Infringement (15 U.S.C. § 1125(a))

To establish trade dress infringement (Count III), a plaintiff must show: "1) the allegedly infringing design is non-functional, 2) the design is inherently distinctive or has acquired secondary meaning, and 3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC, 511 F.3d 350, 357 (3d Cir. 2007) (citation omitted).

Each of these elements was stated in the complaint (Compl. ¶ 47-55), and was not contested. The Court is satisfied that Coach has a meritorious claim for trade dress infringement based on the non-functional nature of the infringement, the distinctiveness of the Coach designs, and the likelihood of confusion.

### D. Trademark Dilution (15 U.S.C. § 1125(c))

To establish a claim for trademark dilution (Count V) under the Lanham Act, a plaintiff must prove that:

> 1) The plaintiff is the owner of a mark that qualifies as a 'famous mark' in light of the totality of the eight factors listed in § 1125 (c)(1), 2) the defendant is making commercial use in interstate commerce of a mark or trade name, 3) defendant's use began after the plaintiff's mark became famous, 4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.

Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 163 (3d Cir. 2000) (citations omitted). As asserted in the fifth count of the complaint, the "Coach trademarks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition." (Compl. at ¶ 63.) Coach states that the marks "are famous within the meaning of Section 43(c) of the Lanham Act." (Id. at ¶ 64.) Coach used the services of a New York-based investigative firm, and the investigator presumably crossed state lines in order to make his purchase from the defendants. See Coach Inc. v. Ocean Point Gifts, 2010 WL 2521444, at *4 (D.N.J. June 14, 2010) (plaintiff's use of Pennsylvania investigator to purchase products from a New Jersey store was sufficient evidence that the defendant was involved in interstate commerce). Finally, Coach alleges that the defendants' use of the infringing marks "is diluting the distinctive quality of the Coach Trademarks and decreasing the capacity of such marks to identify and distinguish Coach products." (Compl. at ¶ 65.) The Court finds that a cause of action for trademark dilution has been established.

*State Claims*

Coach has also asserted four state law claims: trademark counterfeiting under N.J.S.A. § 56:3-13.16 (Count VI), unfair competition under N.J.S.A. § 56:4-1 *et seq.* (Count VII), common law trademark infringement (Count VIII) and unjust enrichment under the common law of New Jersey (Count IX).

   A. **State Statutory Claims**

Coach's state law claims are substantially similar to its federal Lanham Act claims. Courts in this district have found liability under federal law to be sufficient to establish liability under state law. See Axelrod v. Heyburn, No. 09-5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); Zinn v. Seruga, No. 05-3572, 2009 WL 3128353, at *27-28 (D.N.J. Sept. 28, 2009);

**NOT FOR PUBLICATION**

N.V.E., Inc., v. Day, No. 07-4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009). Because Coach has established defendants' liability for its federal claims, Coach has also established trademark counterfeiting under N.J.S.A. § 56:3-13.16 and unfair competition under N.J.S.A. §§ 56:4-1 and 56:4-2.

### B. State Common Law Claims

In its complaint, Coach also states common law claims for trademark infringement and unjust enrichment. Like the statutory claims discussed, liability for trademark infringement under federal law is sufficient to establish common law trademark infringement. See Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F.Supp. 1035, 1039 (D.N.J. 1990) (observing that plaintiff must prove same elements to establish either federal or common law trademark infringement and that identical facts would support common law unfair competition claim and false designation of origin claim under federal law); J & J Snack Foods Corp. v. Nestle USA, Inc., 149 F. Supp. 2d 136, 157 (D.N.J. 2001) (same). The Court finds that a cause of action for common law trademark infringement has been established.

There are two basic elements of an unjust enrichment claim. The plaintiff must "show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Here, the defendants were profiting from counterfeit products based upon Coach's goodwill and reputation. It would be unjust for the defendants to enrich themselves without compensating the plaintiffs. The Court finds that a cause of action for unjust enrichment has been established.

### II. Propriety of Default Judgment

Before granting default judgment, the Court must examine the following factors: "1) prejudice to the plaintiff if default is denied, 2) whether the defendant appears to have a litigable

defense, and 3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

Here, these factors support the issuance of a default judgment. First, Coach will be prejudiced if default judgment is not granted and defendants continue offering counterfeit products using marks that customers are likely to confuse with those owned by Coach. Moreover, the defendants do not appear to have any meritorious defenses. Coach has presented prima facie evidence that it owns multiple Coach trademarks, and defendants have not challenged the allegation that they used a similar mark likely to confuse customers. See Platypus Wear, 2009 WL 2147843, at * 15 ("Because it is unrefuted that the trademarks are registered and owned by plaintiff, the Court finds that had defendants presented in this action, they most likely would not have provided a meritorious defense.") Finally, defendants' delay is the result of their culpable conduct because they have neither responded to the complaint nor to this motion. See Platypus Wear, 2009 WL 2147843, at *15 ("Plaintiff presented exhibits establishing that it properly served defendants. There is nothing before the Court to suggest that defendants' failure to respond to plaintiffs' complaint was caused by anything other than defendants' own culpability and wilful negligence.") The Court grants default judgment to Coach.

### III. Remedies

#### A. Injunction

Coach seeks an injunction against the defendants. Permanent injunctive relief to prevent or restrain trademark infringement is authorized under the Lanham Act. See 17 U.S.C. § 502(a). A court may issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant or a mark registered in the Patent and Trademark Office or to prevent a violation" under subsections (a), (c)

**NOT FOR PUBLICATION**

or (d) of Section 1125. 15 U.S.C. § 1116(a). Before a court will issue an injunction, it "must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001).

The Court finds that these factors all support the issuance of a permanent injunction. As discussed, Coach has stated a cause of action on all of its claims, and is likely to prevail on the merits. Coach will suffer irreparable injury absent an injunction because, without this remedy, defendants are likely to continue their unlawful sale of counterfeit Coach products. See S & R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 378 (3d Cir. 1992) ("[T]rademark infringement amounts to irreparable injury as a matter of law.") Granting injunctive relief will not result in greater harm to defendants because, although they may suffer "some economic losses" if unable to use the disputed mark, they "can hardly claim to be harmed, since [they] brought any and all difficulties occasioned by the issuance of an injunction upon [themselves]." Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 197 (3d Cir. 1990). Finally, the public interest supports the issuance of an injunction because, "having already established that there is a likelihood of confusion created by" defendants' use of the Coach marks, "it follows that if such use continues, the public interest would be damaged." Id. at 198. The Court grants plaintiffs the requested injunctive relief.

### B. Damages

The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)), or statutory damages (15 U.S.C. § 1117(c)). The plaintiffs have elected to recover statutory damages.

11

**NOT FOR PUBLICATION**

(Mem. in Support of Mot. for Default J. and Perm. Inj., at 8-11). A plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit trademark per type of goods or services sold, offered for sale or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). If the use of the counterfeit mark was wilful, the maximum increases to $2,000,000 per mark, per type of good. 15 U.S.C. § 1117(c)(2).

"In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors considered for statutory damages in copyright infringement." Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002) (citing cases showing a wide range of statutory damages awarded by district courts). To assess whether the request is appropriate, the Court may be guided by past statutory damage awards. See Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009). Here, Coach requests a $100,000 award. (Mem. in Support of Mot. for Default J. and Perm. Inj., at 10-11).

In a factually analogous case, Coach, Inc. v. Ocean Point Gifts, the defendant sold counterfeit Coach products out of a storefront on the Atlantic City, New Jersey boardwalk. No. 09-4215, 2010 WL 2521444, at *1 (D.N.J. June 14, 2010). The plaintiff was awarded default judgment, and the court sought to determine the appropriate amount of statutory damages. Id. at *5-8. The court observed that "cases in this District for counterfeit products can be generally grouped under two categories: Internet cases and cigarette cases." Id. at *6. The situation at hand fell "somewhere between the Internet cases and the cigarette cases," because while "the counterfeit products at issue were not widely distributed via the Internet, they are counterfeit luxury items of far greater value than cigarettes." Id. at *7. In that case, the defendant sold four

**NOT FOR PUBLICATION**

types of goods (handbags, wallets, scarves and hats) and infringed five Coach trademarks. Id. The Court chose "to follow the approach of Platypus Wear and award $10,000 per infringement for $200,000 total." Id. (citing Platypus Wear, 2009 WL 2147843, at *7).

The Court notes the factual similarity between Ocean Point Gifts and the present case, and is persuaded by that court's analysis. The plaintiffs' damage request of $100,000 is excessive. Mr. Ricaurte's declaration states that he observed "numerous amounts of sunglasses bearing the Coach Trademark" for sale. (Ricuarte Decl. at ¶ 4.) However, the plaintiff's evidence only demonstrates that the defendants sold one type of product (sunglasses) which infringed one Coach trademark (the "Signature C" Coach Trademark). (Id.) The cases cited by the plaintiff are factually distinguishable, because they are all "Internet cases" and they involved many more trademarks and types of products. See, e.g., Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882 (D.N.J. Oct. 28, 2009) (involving internet sale of six types of goods and 27 infringed trademarks); Chanel, Inc. v. Craddock, No. 05-1593, 2006 WL 1128733 (D.N.J. Apr. 27, 2006) (involving internet sale of nine types of goods and nine infringed trademarks). The Court chooses to follow the approach of Platypus Wear and Ocean Point Gifts, and finds that Coach should be awarded $10,000 in statutory damages.

### C. Damages for Counts III through IX

Statutory damages have been awarded for trademark counterfeiting and infringement under Counts I and II. The permitted scope of monetary damages for Counts III through IX is also encompassed in 15 U.S.C. § 1117. Coach is not entitled to a double recovery on its claims. No additional damages are awarded.

**NOT FOR PUBLICATION**

    **D. Costs and Attorney Fees**

In addition to damages, Coach asks for both attorney fees and costs.  The evidence shows that Coach paid $3,984.00 for attorney fees (Rosenberg Decl. at ¶ 7), $505.38 for costs (id.), and $168.52 for investigative fees.  (Ricaurte Decl. at ¶ 5.)

Section 35(a) of the Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," as well as costs.  15 U.S.C. § 1117(a). Wilful infringement qualifies as an "exceptional case."  See Securacomm Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 279-282 (3d Cir. 2000).  Here, Coach has established that the defendants wilfully infringed Coach's registered and famous trademarks, trade dresses and copyrighted design elements.  The Court finds that Coach's attorney's fees and costs are reasonable, and they are awarded to the plaintiffs.

As part of an attorney's fees award, Coach may also recover reasonable investigative fees, as long as the investigator acted under the direction of an attorney.  See Gordashevsky, 558 F. Supp. 2d at 539; Fila U.S.A. v. Run Run Trading Corp., No 95-7144, 1996 WL 271992, at *11 (S.D.N.Y. May 21, 1996).  The Court finds that Coach's investigative fees are reasonable, and they are included in Coach's total damages award.

## CONCLUSION

The Court grants the plaintiffs' motion for default judgment.  Default judgment of $14,657.90 and a permanent injunction are entered against the defendants.  The accompanying order for default judgment and permanent injunction is hereby entered.

                                                           **s/ William H. Walls**
                                                           United States Senior District Judge